|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| **BETTY E. DRAIN**, | ) | Civil No.: 5:10cv00090 |
| | ) | |
|         *Plaintiff*, | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMENDATION |
| **MICHAEL ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By:  Hon. James G. Welsh |
|         *Defendant,* | ) |      U. S. Magistrate Judge |
| _____ | ) | |

This civil action instituted by the plaintiff, Betty E. Drain, challenges the final administrative decision of the Commissioner of the Social Security Administration ("the agency") denying her claim of entitlement to a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

In her application and related submissions the plaintiff alleges a December 23, 2006 disability onset date due to "[d]epression, panic attacks, mood disorder, bad nerves, broke[n] right ankle, [and] dislocated right elbow." (R.130). Her application was denied initially, on reconsideration, and again following an administrative hearing. (R.11-19,20-49,50-52,111-113). At the hearing the plaintiff was present; she testified, and she was represented by counsel. (R.11,20-49,66-67). The plaintiff's sister was also present and testified, and Robert Lester testified as a vocational witness. (R.11,38-48,100-106). After the ALJ's issuance of his adverse

hearing decision, the plaintiff's requested Appeals Council review. [1] (R.6-7). Her request was denied (R.1-5), and the ALJ's written decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

The Commissioner has filed his Answer to the plaintiff's Complaint and has filed a certified copy of the Administrative Record ("R"), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on January 24, 2011 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have filed cross-motions for summary judgment; each has filed a supporting memorandum of points and authorities, and the views of counsel have been heard. The plaintiff has since filed a motion seeking "that the administrative record be re-opened for the court's consideration of . . . medical records . . . that were not made a part of the administrative record" or alternatively to remand the case for further administrative consideration. (Docket # 19). Citing 28 U.S.C. § 405(g), the Commissioner argues that the court lacks requisite jurisdiction to consider matters outside the administrative record and that the plaintiff has failed to establish the necessary prerequisites for remand on the basis of newly discovered evidence. (Docket # 20). Pursuant to the order of referral, the following report and recommended disposition is submitted.

---

[1] During the pendency of her request for Appeals Council review, through her attorney the plaintiff submitted 177 pages of additional medical records, all dated subsequent to the date of the Commissioner's final decision. (R.582-758). In its Notice and Order denying the plaintiff's request for review, the Appeals Council acknowledged its consideration of this evidence and concluded this evidence "d[id] not provide a basis" for changing the ALJ's decision. (R.1-2,4).

2

On appeal the plaintiff presents two principal arguments. First, she argues that the Appeals Council failed to evaluate properly the "new medical evidence" submitted to it, and second, she makes the general argument that the ALJ erroneously "ignored" her mental health record and inappropriately relied on the functional assessments of the state agency psychologists.

**I.   Summary Recommendation**

Based on a thorough review of the administrative record and for the reasons outlined hereinafter, the plaintiff's contentions of administrative error and her motion seeking remand are both without merit. It is, therefore, recommended that the plaintiff's motion for remand pursuant to sentence six of 28 U.S.C. § 405(g) and her motion for summary judgment both be denied, the Commissioner's motion for summary judgment be granted, and this case dismissed from the docket.

**II.   Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a

3

Case 5:10-cv-00090-MFU-JGW   Document 21   Filed 11/08/11   Page 3 of 16   Pageid#: 999

mere scintilla of evidence but may be somewhat less than preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4$^{th}$Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. (quoting *Craig v. Chater*, 76 F.3$^d$ at 589). Nevertheless, the court "must not abdicate [its] traditional functions,"and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton,* 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

**III.    Facts**

The plaintiff's medical record in this case documents her having sustained right ankle and right elbow injuries on April 24, 2007 as the result of a fall. (R.230). Both injuries were surgically repaired at University of Virginia Medical Center by orthopedist Quanjun Cui, M.D. Following closed reduction surgery, her right elbow dislocation was also healed "well," and by July 27, 2007 she had recovered a good functional range of right elbow motion with only some tenderness and flexion difficulty. (R.266,464). Following open reduction internal fixation surgery, her right ankle fracture also healed without any complication. By September 20, 2007 the fracture was "fully healed," and she had recovered good range of ankle motion with only mild residual tenderness and minimal swelling. (R.285-296,464). On the same date and with the

4

treating orthopedist's express endorsement, the plaintiff was released to return to work without restrictions. (R.464-465).

Inexplicably, twenty days after endorsing this assessment Dr.Cui completed a functional assessment questionnaire in which he opined that the plaintiff remained functionally unable to work at a light or sedentary level of exertion on a regular and sustained basis. (R.442-446). Also inconsistent with this assessment by Dr. Cui is the plaintiff's report less than six months later that she was able to ambulate without any assistive device and had no further treatment planned for her ankle. (R.203).

Based on this record, from a medical standpoint a state agency reviewer in September 2007 concluded that the plaintiff retained the functional ability to perform work a light exertional level, and six months later a second reviewer concluded that the plaintiff's physical condition restricted her to sedentary work with a lifting limitation of 20 lbs. occasionally and with climbing, stooping, balancing, kneeling, crouching and crawling limitations. (R.411-416,452-456).

For the period before October 21, 2009, the date of the ALJ's written decision, the evidence pertaining to the plaintiff's mental health issues begins with the sudden onset of an acute psychotic episode on January 2, 2007. (R.252-254,354,370). On that date she was brought to the emergency room at Page Memorial Hospital by the Sheriff's office for "inappropriate behavior" that included driving her car in circles, repeatedly yelling the word "no" over and over, and singing Christmas carols all day. (*Id*.). She was given Haldol, an anti-psychotic

medication, and referred to Northwestern Community Services Board ("Northwestern") for a psychiatric evaluation pursuant to a temporary detention order. (*Id*.) When seen the following day by a psychiatrist, Randal Scott, M.D., at Virginia Baptist Hospital, she was "at least 50 percent improved, if not more;" she was coherent, and she demonstrated no active psychotic symptoms. (R.344-345,348,365,372). An initial diagnosis of "psychosis NOS" [2] was made; Depakote (an anti-seizure medication) and Risperdal (an anti-psychotic medication) were prescribed, and she was discharged on the third hospital day. (R.344-345).

On January 16, 2007 she was seen by C. Robert Goshen, M.D., for a complete psychiatric assessment screening. He found the plaintiff to be cooperative, to demonstrate no unusual behaviors, no range of expression abnormality, and no inappropriate affect; she was, however, somewhat anxious and at times suspicious. (R.374). He assessed her current level of functioning to be 55 on the GAF scale, [3] and he approved her entry into Northwestern's medication management and biweekly group therapy programs. (R.372-375).

On March 1, 2007 she was treated in the emergency room at Page Memorial after purportedly ingesting a non-toxic amount of Xanax, Tylenol and Butalbital. (R.249-251). At the

---

[2] Not Otherwise Specified

[3] The Global Assessment of Functioning ("GAF") is a numeric scale which ranges from 0 to 100 and is used by mental health clinicians and doctors to represent the judgment of an adult individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), 32 (American Psychiatric Association 1994). A specific GAF score represents a clinician's judgment of an individual's overall level of functioning; for example a GAF of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)," and a GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV at 32.

time of treatment she was nauseous and tested positive for marijuana and cocaine; nevertheless, she "adamant[ly]" denied use of any controlled substances. (R.250).

On each of the next two days the plaintiff returned to the hospital's emergency room for treatment of mental health issues. Reported to have had a panic attack and to be "unresponsive," she was brought to the emergency room by the rescue squad on March 2; she became responsive over time and was discharged (R243-244). When she returned to the hospital for the third time in as many days, she appeared to be catatonic, but became instantly responsive when the emergency room physician told her he was going to check her gag reflex with a tongue depressor. (R.236-237).

Complaining of anxiety and depression, she was again brought to the emergency room for treatment of mental health issues on April 2, 2007. (R.234-235). At the time her vital signs were all normal; her speech was normal; her weight was unchanged; her color and extremities was normal; her neurological examination was normal; her urine screen was normal except for anti-anxiety medications, and she was fully oriented. (R.235). She was, therefore, discharged in a stable condition and referred to Northwestern for follow-up. (*Id.*)

With complaints of depression and an expression of a strong suicidal ideation, "for safety support" the plaintiff was hospitalized for a second time for mental health treatment on June 2, 2007. (R.317-320,544-547). She was started on Prozac, "somewhat improved," and with a "guarded" prognosis she was discharged on the fifth hospital day. (*Id.*).

7

The plaintiff's mental health records from Northwestern for the period between January 2007 and June 2009, additionally show that she was irregularly seen for medication monitoring and for outpatient mental health counseling. (R.235,354-409,470-527,548-571,577-578). At various times mental health professionals noted that her thought processes were markedly impaired due to family crises; similarly from time to time they note her reports of panic and anxiety, but they do not note any attendant abnormality in her intellectual functioning or her independence in daily living activities. (R.365-371,403,497,516,548,570). At other times these records show that she reported only mild or moderate depression or anxiety with no psychotic symptoms, normal alertness, normal thought processes, and normal daily living independence. (R.391,394-400,486,488-494, 511,515,519,524, 548,559,570).

For example, on November 1, 2007 the plaintiff reported being anxious about the denial of her DIB claim, but at the same time she was alert, fully oriented and cooperative, had good eye contact, and exhibited logical and linear thoughts. (R.511). Similarly, on January 16, 2008 she was only slightly depressed and exhibited a neutral or subdued mood with clear and coherent speech, organized thoughts, and an appropriate affect. (R.524). On March 3, 2008 she reported that her mental condition had improved. (R.203). In November of the same year, although she reported experiencing some symptoms of depression and low-level panic attacks, Michael Tyler, M.D., found her thoughts to be organized and goal-directed, her mood to be only "somewhat depressed, and her affect to be only "mildly constricted." (R.548,570). At the end of January 2009 Dr. Tyler again noted that the plaintiff exhibited only mild depressive symptoms which he ascribed to "a number of situational stressors." (R.559). In March she told Dr. Tyler that she was "doing fairly well," was having no panic attacks, and only occasional feelings of depression.

8

(R.553), On the same date and again on June 24, 2009, Dr. Tyler found the plaintiff to have only mild symptoms of depression and anxiety, which were fairly well-controlled with medication. (R.553,577-578). On both occasions he found her thoughts to be organized and goal-directed, and her mood to be neutral with a constricted but appropriate affect. (*Id*,).

IV. Analysis

A.

On November 2, 2009 the plaintiff requested Appeals Council review of the ALJ's September 21, 2009 denial of her DIB application, and at the same time requested a 60-day extension within which "to file legal arguments and additional medical evidence." (R.6-7). The administrative record shows that her counsel subsequently submitted one hundred seventy-seven pages (R.582-758) of additional medical information. (R.582-758). All (or nearly all) of which relate exclusively to her health care subsequent to the decisionally relevant period, and none suggests the presence of any decisionally significant medical or mental health condition not considered by the ALJ.

In addition to a two-page letter dated October 29, 2009 from Suzanne Stevens, M.D., reporting her orthopedic care of the plaintiff following a fall and injury to her right knee in June 2009 that had subsequently required surgical repair of the anterior cruciate ligament in September 2009. (R.583-584), this post-hearing submission to the Appeals Council included additional progress notes from Northwestern dated between December 2, 2009 and May 4, 2010 (R.585-588,742-758), and medical records from Page Memorial Hospital and Woodstock Surgical Clinic variously dated between February 22 and May 27, 2010 documenting the

plaintiff's treatment for persistent gastrointestinal discomfort, for the surgical removal of benign colon polyps, and for the surgical removal of a benign right breast mass, (R.589-741)

The Appeals Council is required to consider evidence such post-hearing submissions only "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Secretary, HHS*, 953 F.2$^d$ 93, 95-96 (4th Cir. 1991); *see* 20 C.F.R. § 404.970(b). To be *new* the evidence must be neither duplicative nor cumulative, and to be *material* it must create "a reasonable possibility that [it] would have changed the outcome." *Wilkins*, 953 F.2$^d$ at 96; 20 C.F.R. § 404.970(b).

Even assuming *arguendo*, as the plaintiff contends, her post-hearing submission to the Appeals Council is new and relates to the relevant period, the plaintiff has failed to meet her burden to show that there is a reasonable possibility it would have changed the outcome. 20 C.F.R. § 404.970(b). Nothing in her submission demonstrates any decisionally significant change in her mental health symptoms or her receipt of treatment for any medical condition which would be expected to interfere with her ability to perform a limited range of light work consistent with the ALJ's exertional and non-exertional findings. [4]

**B.**

---

[4] Based on his consideration of the entire record, including the functional assessments of the state agency reviewers, the ALJ concluded that the plaintiff retained the residual functional capacity to perform a limited range of light work , which required no contact with the general public, only occasional contact with co-workers, the ability to understand, remember and carry-out simple and routine tasks and instructions, the ability to lift and carry 20 lbs. occasionally, the ability to lift and carry 10 lbs. frequently, the ability to stand/walk for 6 hours during an 8-hour day, the ability to sit for 6 hours during an 8-hour day, the ability to tolerate frequent but not constant fingering, handling and reaching, the ability to tolerate occasional bending, balancing, stooping, kneeling, crouching and crawling, and the ability to tolerate only a moderate noise level. (R.15,43-46).

Since the Appeals Council considered this additional evidence before denying the plaintiff's request for review, the court is obligated to review the record as a whole, including the post-hearing submission, in order to determine whether substantial evidence supports the Commissioner's finings. *Wilkins*, 953 F.2$^d$ at 96. As has been noted in the past by others in this District, "[t]his task is a difficult one, since in essence the court must review the ALJ's decision . . . in light of evidence which the ALJ never considered and thus never evaluated or explained." *E.g., Ridings v. Apfel*, 76 F. Supp. 2$^d$ 707, 709 (WDVa. 1999).

Pursuant to that obligation, at the outset it merits mention that the additional evidence submitted by the plaintiff to the Appeals Council demonstrates no new medical conditions for which the plaintiff sought post-hearing treatment that either lasted or could be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

Although her June 2009 knee injury is alleged to have occurred during the relevant time period, Dr. Stevens reported the swelling abated and her range of motion returned to normal with conservative treatment. (R.583). Six weeks after her September surgery, the plaintiff was ambulatory with the use of an assistive device (R.583), and by February 22, 2010 she was fully ambulatory, and her extremities were all unremarkable except for the use of a right ankle brace (R.630-631,635,651,690-691,733-734).

Four months after the ALJ made his decision, the plaintiff for the first time sought medical treatment for abdominal complaints that she reported having been experiencing for "about [four to six] months." (R.633,649). Similarly, it was not until Spring of 2010 that the

benign breast mass and benign colon polyps were separately identified and surgically removed. (R.589-602).

In summary, none of the new treatment evidence (apart from the report of her conservative treatment for a knee injury) submitted to the Appeals Council speaks to her condition during the relevant time period. Thus, this evidence is decisionally immaterial. Similarly, to the extent that Dr. Stevens' letter makes the conclusory assertion that the plaintiff is disabled it too is immaterial. 20 C.F.R. § 4041527(e)(1).

## C.

Contrary to the plaintiff's general argument that "the record as a whole supports [her] claim of disability," the ALJ's decision more than adequately supports his conclusions that her impairments were neither of listing-level severity [5] nor disabling within the meaning of the Act.

He accurately and in considerable detail outlined the bases for his finding that her mental impairment neither met nor medically equaled the criteria of either Listing 12.04 (affective disorders) or 12.06 (anxiety-related disorders) and for his finding that her physical impairments neither met nor medically equaled the criteria of Listings 1.02 (major joint dysfunction), 1.06 (femur, pelvis or other major lower extremity bone fracture) and 1.07 (upper extremity bone fracture with non-union of the fracture. (R,14-17). *Inter alia*, in reaching these conclusions and making his non-disability determination, the ALJ appropriately considered plaintiff's medical

---

[5] The adult impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1, are descriptions of approximately 125 physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a [person] to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *See* Social Security Ruling (SSR) 83-19; *Sullivan v. Zebley,* 493 U.S. 521, 529-530 (1990).

Case 5:10-cv-00090-MFU-JGW   Document 21   Filed 11/08/11   Page 12 of 16   Pageid#: 1008

and mental health treatment history, her good response to elbow and ankle surgery, her ability to ambulate effectively within a 12-month period, her release to return to work without restrictions in September 2007, the extent to which her impairments could be expected to produce pain or other subjective symptoms, the extent of her mental impairments (including the absence of any marked impairment), her mildly restricted level of daily activities, the absence of any extended episodes of decompensation, her vocational profile, the assessments by the state agency reviewers, [6] and the vocational testimony. (R.12-19).

## D.

As previously noted, after briefing and oral argument, the plaintiff separately filed a motion seeking "to re-open" the record. (Docket # 19). In addition to the attachment of one hundred fifty pages of medical information, she alleges in her motion that all of these records were submitted to the Appeals Council but some were not made a part of the administrative record. Most particularly, she contends that a mental residual functional assessment by James Jarrell, M.D., dated December 16, 2009 (Docket # 19-2) and four treatment records of R, David Lee, M.D., three of which are dated after the date of the ALJ's decision (Docket # 19-5) are new, material, and demonstrate her disability. In response to this motion and asking that it be denied, the Commissioner points-out that Dr. Lee's treatment notes deal primarily with non-disabling and transient medical issues (acute sinusitis and bronchitis, gastrointestinal upset, intermittent ear pain, and heartburn), that Dr. Lee noted the absence of any musculoskeletal problems at the time

---

[6] The plaintiff's argument that it was improper for the ALJ to rely on the functional assessments of the state agency reviewers (R.411-416,418-435,436-440,452-458) and ignore the treating source assessment of Dr. Cui (R.442-446) ignores completely the fact that Dr. Cui's assessment was neither consistent with the plaintiff's treatment records nor with his express endorsement of her ability to return to work without restriction, and it similarly ignores the ALJ's decisional obligation "to consider opinions of State Agency medical or psychological consultants." 20 C.F. R. 1527(f)(2).

13

of his January 2010 "well-woman" examination, that Dr. Jarrell did not see the plaintiff until September 9, 2009, and that his questionnaire responses neither pertain to the decisionally relevant period nor are they well-supported by his treatment record.

On review, the Commissioner's argument is compelling, and the bases for the plaintiff's motion to re-open are not decisionally material. *See Wilkins v. Secretary*, 953 F.2$^d$ 93, 96 (4th Cir. 1991); 42 U.S.C. §405(g). Although the plaintiff argues that this "new" evidence was timely submitted to the Appeals Council for proper evaluation, the plaintiff has not presented any material facts placing at issue the fundamental findings and conclusions of the ALJ. Therefore, the plaintiff's motion to re-open should be denied.

## V.     Proposed Findings

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence and contains no legal error;

2. The treating source opinion of Dr. Cui is neither consistent with the plaintiff's relevant treatment records nor consistent with his express endorsement of the plaintiff's ability to return to work without restrictions;

3. The ALJ properly considered the assessments of the state agency medical and mental health reviewers;

4. Neither the additional records submitted to the Appeals Council nor those attached to the plaintiff's Motion to Re-open contain a substantial evidentiary

basis to establish to change in the plaintiff's ability to do basic work activities during the decisionally relevant period;

5       Neither the additional records submitted to the Appeals Council nor those attached to the plaintiff's Motion to Re-open meet the requirements that they be "new" and "material," and none evidence a material change in the plaintiff's medical or mental health condition during the decisionally relevant period;

6       The additional records attached to the plaintiff's Motion to Re-open contain no substantial evidence of a severe medical condition that is expected to last at least one year;

7       The additional records would not have changed the outcome;

8       The plaintiff's knee injury and related treatment is the only decisionally relevant new finding or diagnosis in the additional record submissions;

9       The plaintiff has not met her burden of proving her entitlement to a period of DIB;

10      Substantial evidence supports the finding that the plaintiff's mental health impairments and her physical impairments, singularly and in combination, neither met nor equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; and

11      The plaintiff's motion for summary judgment and her motion to re-open should be denied.

## VI.   Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, DENYING the plaintiff's motion for summary judgment and her motion seeking to re-open the administrative record, and that an appropriate order issue STRIKING this case from the docket of the court.

15

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII.   Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 8th day of November 2011.

/s/ *James G. Welsh*
United States Magistrate Judge